No. 1645.—Succession of A. A. DUPLANTIER, Deceased Wife of THOMAS PENISTON.—Opposition to Tutorship's Account.

APPEAL from the Second District Court of New Orleans. *Thomas, J. Roselius & Philips,* for opponent and appellant, *Cyprian Dufour,* for executor and appellee.

REPORTER.—This case was before the Supreme Court in May, 1867, and remanded to give the executor an opportunity of producing evidence to establish the correctness of the account which he had filed on behalf of the deceased tutor. On the second trial no other evidence was offered than that which was before the court on the first trial. The judgment of the District Court was the same as the first. The questions involved in the decision are set forth in the first opinion of the Supreme Court, reported in 19 Annual, page 277.

TALIAFERRO, J. The circumstances attending this case are peculiar and anomalous. A natural tutor who had under his administration for nearly eighteen years a large estate belonging to his minor child, died towards the close of the year 1862, without ever having presented an account of the tutorship. Shortly after the death of his father, the minor was emancipated and required from the executor of the estate of his father an account of the tutorship. An account was presented but owing to its informal character and the necessarily tedious examination of a mass of papers accompanying it, the court referred the account to auditors. Pending the investigation by the auditors and before they were prepared to report, the whole of the vouchers and papers of every kind relating to the tutor's administration were destroyed by the conflagration of the building in which they carried on their labors. The executor was called upon by an order of court to file another account. This he did· stating the amount of the tutor's indebtedness the same as in the account at first rendered, to wit: $64,135 31.

An opposition was filed on the part of the minor, and with it a detailed statement of the amount claimed to be due him for proceeds of property sold by the tutor, revenues received · by him from rent of houses, lots, etc., in New Orleans and in the parish of Jefferson, interest on the money received, etc., the whole running up to one· hundred and ninety-nine thousand nine hundred and fifty-nine dollars and thirty-one cents.

This demand is stated in the form of an account running from year to year, with the balances carried forward, bearing interest after allowing various credits and the commissions of the tutor on the revenues of the minor.

Upon the trial ·of the case the opposition was overruled, judgment in favor of the minor was rendered for the sum stated by the executor, viz: $64,135 31. From this judgment the minor appealed, and the

appeal was before the Supreme Court in May, 1867. See 19 Annual, page 277.

The court at that time noting the very great discrepancy between the sum set down by the executor as due the minor and that claimed by the minor, and considering the loss of the papers which the tutor had preserved as vouchers to support his account of tutorship, and that the executor might by resorting to secondary evidence supply to some extent the evident deficiency of proof to establish the correctness of the tutorship account which he presented, reversed the judgment of the lower court and remanded the case.

No action whatever was taken by the executor to amend his proof; he filed the same account again and was met by the same opposition. The court below reiterated its judgment and apparently with stronger conviction of its correctness than when it passed upon it in the first instance. The opponent again appealed. We are left then to determine this controversy from the incomplete data before us.

We have gone over the ground under the best lights afforded. The claim of the minor in our judgment is sustained by preponderating evidence. We can by no means believe the account of the executor authenticated, and without proof to the contrary for the production of which ample opportunity was granted and none offered, we cannot believe that the liability of the succession of the tutor can be placed at the low figure at which the executor has fixed it. We are told that the amount was fixed by the tutor himself shortly before his death, and that his book of accounts relating to the administration of the minor's property, together with the numerous vouchers accompanying, were intrusted by him to a notary since dead, a gentleman of probity, to make out a regular and formal account. The counsel of the executor and the judge a quo find much weight in the fact that the father of the minor himself stated the amount of his indebtedness to his child, and that it should be presumed right.

We regret that the evidence in the record does not enable us to concur with these views, so creditable to their charity. We find from the record that the tutor sold property of the minor to an amount exceeding one hundred and twelve thousand dollars, every dollar of which we have no doubt he received.

On the twenty-fifth of April, 1857, real estate in Jefferson was sold for $25,140; on the tenth of May, 1858, slaves were sold to the amount of $3935; and in the month of February, 1860, a further sale of real estate in Jefferson was made to the amount of $83,820. The inventories show in the minor ownership of various houses and lots in New Orleans and lots of ground in Jefferson. Voisin, a witness testifies that he was for six or seven years the agent of the tutor in the collection of rents. He says that the rents of houses and lots and of vacant lots for gardens, etc., amounted to from $600 to $800 per month, adding to this the interest on money in the hands of the tutor,

proceeds of the sales of property, the minor must have had a revenue of over ten thousand dollars per annum after 1857; and this must have increased after the large sale of his Jefferson property in 1860. From some accounts and memoranda of Voisin, in evidence, the cost of erecting buildings on lots of the minor on Apollo and Terpsichore streets in 1860, was $12,000. This, with repairs of buildings from 1858 to the end of 1862, makes the sum of $15,039 87. The rents, the witness states, immediately increased on the new buildings put up on Apollo and Terpsichore streets. The hire of the minor's slaves before they were sold also helped to swell his large revenue.

From aught that appears in the evidence we must conclude that the income of the minor exceeded quite largely all the costs of repairs of buildings, the various other expenses of the property, and his own support, clothing and education.

As we have already said, the evidence preponderates in favor of the minor's claim. We think that judgment must be rendered in his favor.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be annulled and reversed, and that the opponent Joseph Allard Peniston have and recover from the succession of his late father Thomas Peniston, the sum of one hundred and ninety-nine thousand nine hundred and fifty-nine dollars and thirty-one cents with interest thereon at five per cent. per annum from the first day of February, A. D. 1864, with legal mortgage, to be paid by preference. The costs to be borne by the succession.